**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| ALION SCIENCE AND TECHNOLOGY CORPORATION, Plaintiff, | ) | |
| v. | ) | No. ___________ |
| THE UNITED STATES OF AMERICA, Defendant. | ) | **AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC** |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

For its Complaint against Defendant United States, Plaintiff Alion Science and Technology Corporation ("Alion"), by undersigned counsel, states as follows:

**NATURE OF THE ACTION**

1. Plaintiff Alion, by this Complaint, respectfully seeks preliminary and permanent injunctive and declaratory relief against the United States, acting through the Defense Information Systems Agency ("DISA" or "Agency"), in the form of one or more orders declaring that: 1) In awarding a contract under Solicitation Number HC1046-05-R-4009 for electromagnetic spectrum engineering services for the Agency's Joint Spectrum Center ("JSC") to ITT Industries, Inc. ("ITT"), DISA failed to reasonably identify and assess the extent and effect of the Organizational Conflicts of Interests ("OCI") inherent in performance by ITT, and DISA failed to reasonably evaluate the OCI Mitigation Plan ("OCI Plan") submitted by the awardee, ITT; and 2) DISA is enjoined from following the recommendations set forth in the decision by the Government

Accountability Office (the "GAO") in its September 26, 2006 decision on Alion's protests of the underlying Solicitation, denominated GAO Protest Nos. B-297022.4 and .5.

**PARTIES**

2. Plaintiff Alion is an employee-owned technology solutions company that delivers technical expertise and operational support to the Department of Defense ("DoD"), civilian government agencies and commercial customers. Alion is one of two offerors competing in this procurement. Along with its predecessor, the IIT Research Institute ("IITRI"), Alion has been performing the JSC Contract for nearly 40 years. Alion's JSC Contract has been extended through December 31, 2006. *See* Modification No. P00210, Ex. A.

3. Defendant is the United States acting through DISA on behalf of DoD's JSC.

**JURISDICTION AND VENUE**

4. This Court maintains jurisdiction and venue over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b).

**FACTUAL BACKGROUND**

**THE PROCUREMENT FOR JOINT SPECTRUM CENTER ELECTRONIC SPECTRUM ENGINEERING SERVICES**

5. This procurement has endured a long and arduous life. It began in February 2005, when DISA issued RFP No. HC1047-05-R-4009, seeking proposals to provide the Agency's JSC "with Electromagnetic Spectrum Engineering ("ESE") services to facilitate improved mission effectiveness." RFP at 4, Ex. B.

6. The Solicitation contemplated the award of an Indefinite Delivery Indefinite Quantity ("IDIQ") task order type contract, and it set forth six task areas to be performed under the contract, including Operational Spectrum Support; E3 (Electromagnetic Environmental

Effects) and Spectrum Engineering; Modeling and Simulation; Information Management; Research and Evaluate Emerging Technologies; and Technical Advice. *Id.*

7. Activities to be performed under each area included: analyzing incidents of electromagnetic interference ("EMI"), determine causes, and recommend methods of resolution; coordinating electromagnetic compatibility ("EMC") standards; analyzing equipment and systems for potential E3 problems and recommending solutions; assisting the acquisition community by assessing E3; providing assistance in acquiring host nation approval for equipment operation; determining electromagnetic spectrum implications and opportunities for exploitation by DoD; and analyzing national and international electromagnetic spectrum issues and advising executive decision makers on the technical viability of policy and implementation options. *Id.*; *see Alion Science and Technology Corporation*, B-297022.4, .5, January 9, 2006 ("*Alion II*").

8. The Scope of the RFP set forth that "[s]ervices are provided to the JSC in support of the Warfighter, Federal and non-Federal agencies, allied Governments, NATO, and the private sector." *Id.* (emphasis added).

9. The RFP set forth that proposals would be evaluated on the basis of technical factors, past performance, and cost/price; the award would be based on the proposal offering the best overall value to the government. *Id.* at 62.

10. Under the technical factor, the RFP established four subfactors: technical approach, management plan, transition plan, and organizational strategic quality assurance plan. Under the subfactor for technical approach, the RFP established evaluation elements that corresponded to each of the task areas of contract performance. Under the subfactor for management plan, the RFP initially established several evaluation elements, which included



**AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC**

"Organizational Conflict of Interest Plan," which called for evaluation of "the offeror's plan to manage potential conflicts of interest." *Id.* at 64-66, Ex. B; s*ee Alion Science and Technology Corporation*, B-297022.3, January 9, 2006 ("*Alion I*") at 3.

11. Three offerors submitted proposals in response to the RFP in April 2005, including Alion and ITT Industries, Inc. ("ITT").[1] Discussions were conducted, proposal submissions were submitted, and final proposals were then evaluated. DISA selected ITT's proposal for award in July 2005.

**ALION'S INITIAL PROTEST BEFORE THE GAO**

12. In August 2005, Alion protested the award before the GAO on the basis that the Agency failed to reasonably consider the OCIs created by ITT's performance of the contracts. The protest was dismissed after the Agency informed the GAO that it was taking corrective action. In actuality, the corrective action served to water down the extent to which DISA would need to be concerned with OCIs by deleting the OCI Plan evaluation subfactor, thereby defaulting to assessing OCI issues only under the "go/no-go" basis established in FAR 9.5. *Alion I* at 4. After the protest was dismissed, the Agency requested that Alion and ITT submit revised OCI Plans.

13. In its first OCI Plan, ITT claimed to have identified potential OCIs that could be encountered in performing the contract requirements. ITT stated that in instances where potential OCIs were identified, the conflicted work would be blindly assigned to an ITT subcontractor and a so-called "firewall" would be created between ITT and the subcontractor. ITT OCI Plan, Sept. 9, 2005 at 14.

14. The Agency assessed Alion's and ITT's OCI Plans. With regard to contract performance by ITT, the Agency concluded that there was a "maximum potential" for 15 percent of the contract requirements to create conflicts, but stated that it considered this estimate to be "high" and that actual OCIs were expected to be significantly lower. *See* Addendum to Source Selection Authority Decision, Sept. 22, 2005 at 2. The Agency concluded that ITT's OCI Plan was acceptable based on its assessment and ITT's stated intent to rely on firewalled subcontractor to perform potentially conflicted portions of the contract requirements. Thereafter, the Agency informed Alion that it was confirming its original award decision to ITT.

15. In September 2005, Alion filed another protest with the GAO, challenging DISA's source selection decision on several grounds, including that the Agency conducted a flawed OCI assessment. In a decision issued on January 9, 2006, the GAO agreed with Alion, holding that DISA failed to meaningfully address the fact that ITT, as well as ITT's competitors, manufacture and market multiple spectrum-dependent products, and that these products are sold to, and used by, multiple customers, including various departments within the U.S. government, foreign governments, and commercial customers worldwide. *Alion Sci. & Tech. Corp.*, B-297022.3, Jan. 9, 2006, 2006 CPD ¶ 2 ("*Alion I*"). Further, the Agency's assessment was based on the assumption that only performance of acquisition-related activities under the contract would create potential OCIs. As the GAO held, DISA had failed to recognize that OCIs are created any time contract performance involves a contractor's exercise of judgment with regard to matters that have the potential to affect other contractor-related interests. *Id.* at 11.

---

[1] The third offeror's proposal was eliminated from further consideration based on DISA's evaluation of initial proposals. *Alion I* at 3 n.5.

16. The GAO recommended that DISA reconsider the extent and potential impact of ITT's OCIs on its spectrum-related interests, specifying that the Agency fully identify ITT's involvement with spectrum-related products and services and similarly identify ITT's competitors and customers with spectrum-related interests. Further, the GAO recommended that, upon identification of the spectrum-related interests of ITT, its competitors, and its customers, that the Agency reconsider the potential OCIs reasonably created by ITT's performance of the various contract requirements. GAO also recommended that DISA consider the impact that ITT's reliance on firewalled subcontractors would have. *Id.*

**THE AGENCY'S SUBSEQUENT EVALUATION OF REVISED OCI MITIGATION PLANS**

17. Following the GAO's recommendations, DISA requested that Alion and ITT submit re-revised OCI Plans.

18. Upon reviewing the re-revised OCI Plans, DISA determined that ITT's performance of the contract will create a higher level of potential OCIs than it had earlier concluded. *See* Impaired Objectivity Organizational Conflict of Interest Assessment of ITT Industries, Inc. May 31, 2006. In fact, the Agency determined that ITT's performance of the contract would result in 29 percent of the contract work being conflicted — nearly double the allegedly "maximum" 15 percent that the Agency concluded would be conflicted in its earlier evaluation. Nevertheless, DISA still concluded that despite the impact that the higher level of potential OCIs would have on contract performance, an award to ITT would result in the best overall value to the government.

19. DISA reviewed ITT's updated OCI Plan. After researching the scope of ITT's spectrum-related interests, DISA purports to have reconsidered the nature of the contract activities to be performed under the Solicitation, stating that its focus was on the extent to which



AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

the anticipated activities could create OCIs for ITT. DISA also reviewed JSC projects that were performed under Alion's incumbent contract, but it limited its review to only those performed on the incumbent contract during the preceding fiscal year. In doing so, DISA made judgments as to the potential OCIs that it perceived the activities would create for ITT, and then calculated the dollar value of the potentially conflicted work. DISA Impaired Objectivity (IO) Organizational Conflict of Interest (OCI) Assessment of ITT Industries, Inc. at ii. Ex. C.

20. DISA also claims to have considered all the effects that ITT's reliance on blindly firewalled subcontractors to perform potentially conflicted portions of the contract requirements would have. As it had proposed in its September 2005 revised OCI Plan, ITT indicated that [redacted] Even in that plan, ITT recognized that up to [redacted] of the total contract effort would be performed by firewalled subcontractors. ITT Revised OCI Mitigation Plan. Ex. D.

21. In making the determination that ITT's revised OCI plan was sufficient to mitigate conflicts, [redacted] the source selection authority, communicated to other agency personnel that "I am uncomfortable with the extent of [ITT's] conflicts" but that "this will break Alion's stranglehold." June 8, 2006 E-Mail from [redacted], Ex. E. Neither the FAR nor the ground rules established in the RFP for this procurement allow an agency to rely on such a predisposition against an incumbent to outweigh concern with OCIs and perhaps more importantly, as a basis for a source selection decision. *See Lockheed Martin Aeronautics Co., et al.*, B-295401, *et al.*, Feb. 24, 2005, 2005 CPF ¶ 41.

**ALION'S SUBSEQUENT PROTEST BEFORE THE GAO**

24. In June 2006, DISA notified Alion that ITT had again been selected for contract award. On June 20, 2006, Alion filed a protest with the GAO challenging DISA's selection of



AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

ITT. Among its grounds of protest, Alion explained that the Agency's source selection was unreasonable because the Agency again failed to adequately analyze ITT's OCIs, and it neglected to consider how blindly farming out such a significant amount of work to firewalled subcontractors necessarily changed the scores on ITT's proposal.

25. On September 26, 2006, the GAO issued a decision denying Alion's protest. *Alion Sci. & Tech. Corp.*, B-297022.4, .5, Sept. 26, 2006 at 8 ("*Alion II*").

## COUNT I
### FAILURE TO FOLLOW THE SOLICITATION'S STATED EVALUATION CRITERIA

26. Alion incorporates each of the allegations in paragraphs 1 through 25 as if fully set forth herein.

27. In accordance with 10 U.S.C. § 2305(b)(1), FAR 15.303(a)(4) and 15.305(a), an agency is required to follow the evaluation factors for award stated in the Solicitation, here denominated HC1046-05-R-4009.

28. ITT's OCI Plan heavily emphasized its reliance on "firewalls" between ITT and its blind subcontractors. As a result, significant elements of ITT's proposal, including its [redacted] were adversely affected. The Agency failed to reevaluate ITT's proposal to take into consideration the impact of ITT's proposed firewalling.

29. Because ITT can no longer perform significant tasks under the Contract, ITT's OCI Plan heavily emphasized reliance on subcontractors in place of ITT, while the Agency's initial past performance evaluation [redacted].

30. The Agency failed to reevaluate past performance to take into consideration the impact of ITT's proposed firewalling.



AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

31. Therefore, the Agency violated procurement law and regulation by failing to follow the Solicitation's evaluation criteria. Had the Agency re-evaluated ITT's proposal to take into consideration the impact of ITT's proposed firewalling, ITT's evaluation scores would have significantly decreased, thereby substantially improving Alion's opportunity for award and/or causing Alion's proposal to be selected as the best value under this Solicitation.

**COUNT II**
**FAILURE TO FOLLOW THE OCI REQUIREMENTS OF FAR 9.5**

32. Alion incorporates each of the allegations in paragraphs 1 through 31 as if fully set forth herein.

33. FAR 9.506(b) requires that "[i]f the contracting officer decides that a particular acquisition involves a significant potential organizational conflict of interest, the contracting officer shall, before issuing the solicitation, submit for approval to the chief of the contracting office (unless a higher level official is designated by the agency) — a written analysis, including a recommended course of action for avoiding, neutralizing, or mitigating the conflict…." *See also Filtration Development Co, LLC v. United States*, 63 Fed. Cl. 612, 623 (2005).

34. Neither the chief of the contracting office nor any other higher level official approved any OCI mitigation analysis prepared by the contracting officer prior to issuance of the Solicitation, or even reasonably thereafter.

35. Therefore, the Agency has failed to follow the OCI requirements of FAR 9.5. In doing so, the Agency has substantially decreased Alion's opportunity for award and/or prevented Alion's proposal from being deemed the best value under this Solicitation.

## COUNT III
### FAILURE TO FOLLOW THE OCI REQUIREMENTS OF FAR 9.5

36. Alion incorporates each of the allegations in paragraphs 1 through 35 as if fully set forth herein.

37. FAR 9.5 mandates that OCIs be identified as early in the procurement process as possible and that OCIs be fully mitigated.

38. Throughout the instant procurement, the Agency failed to identify all of ITT's OCIs.

39. The Agency still has not identified all of ITT's OCIs.

40. ITT's proposed OCI mitigation approach — to use firewalled subcontractors — is unproven, and the Agency has not meaningfully determined whether ITT's firewall approach will effectively mitigate ITT's potential OCIs, particularly given that about a third or more of ITT's contract work will need to be blindly subcontracted, as the Agency concedes.

41. The Agency's determination that ITT's OCIs are segregable is unreasonable and inconsistent with the GAO's protest decision in this same procurement earlier this year.

42. Therefore, the Agency has failed to follow FAR 9.5. In doing so, the Agency has substantially decreased Alion's opportunity for award and/or prevented Alion's proposal from being deemed the best value under this Solicitation.

## COUNT IV
### FAILURE TO DISQUALIFY ITT FROM CONTRACT AWARD UNDER FAR 9.5

43. Alion incorporates each of the allegations in paragraphs 1 through 42 as if fully set forth herein.

44. FAR 9.5 requires that award cannot be made to an offeror with an unmitigatable OCI, unless the chief of the contracting office executes a waiver to do so.



AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

45. ITT's OCIs are not mitigatable, and the chief of the contracting office has not waived the conflict.

46. Therefore, ITT should have been disqualified from consideration for award, and award should be directed to Alion.

## COUNT V
### FAILURE TO AWARD ALION THE CONTRACT BECAUSE OF THE AGENCY'S PREDISPOSITION AGAINST ALION

47. Alion incorporates each of the allegations in paragraphs 1 through 46 as if fully set forth herein.

48. FAR 1.602-2(a) charges contracting officers with the responsibility of ensuring "that contractors receive impartial, fair, and equitable treatment."

49. Based on the Agency's perception about Alion's so-called "stranglehold," the Agency was predisposed against awarding a contract to Alion.

50. If the contracting officer and other Agency officials had not been predisposed against Alion in violation of FAR 1.602-2(a), Alion's opportunity for award would have increased substantially.

## PRAYER FOR RELIEF

Wherefore, Alion respectfully requests that the Court:

a. grant Alion the relief requested in its Complaint;

b. award Alion its reasonable fees, costs, interest, and expenses incurred in prosecuting its Complaint; and



AGREED-UPON REDACTED COPY – MAY BE MADE PUBLIC

c. grant Alion such other and further relief as the Court deems just and proper.

Dated: September 29, 2006

Respectfully submitted,

J. Scott Hommer, III
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1685
Telecopier No.: (703) 821-8949
Protected Telecopier No.: (703) 760-1644
*Counsel for Alion Science and Technology Corporation*

Of Counsel:

L. James D'Agostino
Richard L. Moorhouse
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone No.: (703) 749-1300
Telecopier No.: (703) 749-1301

Peter A. Riesen
Keir X. Bancroft
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 821-8949

MC1DOCS1#213257\03



AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC

**CERTIFICATE OF SERVICE**

This is to certify that, on the 29th day of September 2006, I caused copies of the foregoing COMPLAINT to be served by hand delivery the following:

Jefferson Hughes
United States Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20005

Flayo O. Kirk
Office of General Counsel
Defense Information Systems Agency
Defense Information Systems Agency
5111 Leesburg Pike, Suite 900, Skyline 5
Falls Church, Virginia 22041
*Counsel for ITT*

Keir X. Bancroft



AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC