Agreed Upon Redacted Copy - May Be Made Public

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| ALION SCIENCE AND TECHNOLOGY CORPORATION,<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>ADVANCED ENGINEERING & SCIENCES, A DIVISION OF ITT CORPORATION,<br>Defendant-Intervenor. | No. 06-682-C<br>(Judge Hodges)<br><br>~~FILED UNDER SEAL: REQUEST FOR PROTECTIVE ORDER PENDING~~ |

## ITT OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Advanced Engineering & Sciences, a division of ITT Corporation ("ITT"), submits the following opposition to the motion of Plaintiff Alion Science and Technology Corporation ("Alion") for a temporary restraining order ("TRO").[1]

[1] Alion has now tendered two substantial briefs and multiple declarations addressing the merits of its claims. ITT will respond to those briefs and provide a full response on the merits in its opposition to the motion for preliminary injunction. In the meantime, this opposition summarizes ITT's position. In order to provide the Court with more detailed information about the facts and ITT position on the merits of Alion's claims at this time, however, we are attaching as Exhibit 1 a copy of ITT's comments on the Alion claims as filed at the Government Accountability Office ("GAO") on August 7, 2006.

J.M.W. 10/10/06

## PRELIMINARY STATEMENT

The moving party on an application for a TRO bears a heavy burden of establishing both a probability of success on the merits and the likelihood of severe and irreparable harm in the period of time before the Court will have an opportunity to rule on a motion for a preliminary injunction. *See Bannum, Inc. v. United States*, 56 Fed. Cl. 453, 456 (2003); *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001). Further, that harm must be shown to clearly outweigh the harm to the other parties from the issuance of the TRO. *OAO Corp.*, 49 Fed. Cl. at 484. Alion cannot come close to making these showings here.

All of Alion's claims relate to its core theory that ITT should have been disqualified because it would have certain acknowledged conflicts of interest if it performed certain of the projected contract tasks. But ITT will not perform such tasks. For any work on which ITT might have impaired objectivity due to its other business interests, the task will be assigned to another, independent member of the ITT team. There is no legal authority for Alion's disqualification argument, and Alion cites none. In fact, the Government Accountability Office has long recognized that organizational conflicts of interest in government contracting can be cured through the assignment of work to "firewalled" subcontractors. *E.g., Deutsche Bank, B-289111, Dec. 12, 2001, 2001 CPD ¶ 210.* And Alion has failed to allege — much less demonstrate — specific, material errors in the agency's extensive assessment of the conflict issue, of ITT's plan for addressing it, or of the potential impact of the use of firewalled subcontractors on the quality of service.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

On the balance of harms, the Government and ITT urgently need to get on with this much delayed contract, whose performance originally was slated to commence in June of 2005. This competitive contract replaces an obsolete and expensive sole source contract that Alion has held in one form or another for some 40 years. Unless ITT can begin the transition very soon, both the latest transition deadline of December 31, 2006, and ITT's capability to accomplish that transition in the required 90-day timeframe will be placed in jeopardy. Every additional day of delay is injurious.

## STATEMENT OF THE CASE

This is a bid protest action challenging the award of a contract known as the Joint Spectrum Center ("JSC") Electromagnetic Spectrum Engineering Services ("ESES") contract to ITT. The Defense Information Systems Agency ("DISA") issued the solicitation for the contract on February 23, 2005. Three offerors, including ITT and Alion, submitted proposals. On July 22, 2005, the Source Selection Authority ("SSA") selected ITT for award on a best value basis, finding that its proposal was technically superior to Alion's and that ITT had a lower evaluated cost. The agency formally awarded the Contract, No. HC1047-05-C-4049, to ITT on August 5, 2005.

Alion then filed a series of related protests of the award with the Government Accountability Office ("GAO"). The gist of those protests was a claim that ITT had what Alion characterized as an "unmitigatable" organizational conflict of interest that should have made ITT ineligible for award. All parties — Alion, DISA, and ITT — agreed that ITT would have certain potential conflicts of interest in performing the contract. The



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

dispute centered on the extent of those conflicts and whether or not ITT had proposed an adequate and acceptable plan for avoiding or mitigating the conflicts during performance. In particular, ITT had originally proposed a team of [redacted] subcontractors with [redacted] technical expertise and experience in various areas required for contract performance. To mitigate its potential conflicts, ITT proposed, inter alia, to assign any tasks as to which ITT's objectivity might be impaired due to its other business interests to one of its subcontractors. That subcontractor would be "firewalled" from communicating with ITT about the substance of the task.

On January 9, 2006, in response to Alion's original set of protests, GAO issued a decision rejecting Alion's theory that ITT had an unmitigatable conflict, but sustaining the protest on the ground that DISA had failed to adequately identify the nature and extent of ITT's likely conflicts. *See Alion Science & Technology Corp.*, B-297022.3, Jan. 9, 2006, 2006 CPD ¶ 2 ("*Alion I*"). GAO therefore recommended that the agency reconsider the extent of the impaired-objectivity conflicts of interest that ITT would likely encounter in contract performance, assess the impact of ITT's proposed use of "firewalled" subcontractors to mitigate such conflicts on ITT's quality of performance, and make a new source selection decision. *Id.* DISA agreed to fully implement GAO's recommendations.

The agency then obtained revised and updated Organizational Conflict of Interest Mitigation Plans from both offerors and performed an exhaustive analysis of ITT's potential conflicts of interest and of the potential impact on quality of service resulting from ITT's proposed use of firewalled subcontractors to perform the conflicted work.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

DISA set forth its analysis of these matters in a 46-page narrative report, accompanied by some 450 pages of task-specific "OCI worksheets." The narrative portion of the report, dated May 31, 2006, and titled *Impaired Objectivity (IO) Organizational Conflict of Interest (OCI) Assessment of ITT Industries, Inc.*, is Exhibit C to Alion's memorandum in support of its motion for a preliminary injunction.

On June 8, 2006, based on the results of the agency's new assessment of ITT's potential conflicts and their likely impact on ITT's performance, the SSA reaffirmed her previous selection of ITT for contract award. She found that ITT could avoid or mitigate its potential conflicts and that ITT's proposed use of firewalled subcontractors "will result in minimal cost, schedule and quality impacts." Memorandum for Head of Contracting Activity at 1. On June 9, 2006, the agency directed ITT to resume contract performance under the previously awarded contract and ITT in fact commenced performance for a period of about 11 days.

On June 20, 2006, Alion filed a new GAO protest, thereby obtaining a new statutory stay of performance. On September 26, 2006, after extensive submissions from all parties, GAO issued a decision denying the protest. GAO held that the agency had reasonably identified ITT's potential conflicts and reasonably determined that these conflicts would be avoided by the assignment of that work to subcontractors with minimal impact on the contract performance or cost. *Alion Science & Technology Corp.*, B-297022.4 and .5, Sept. 26, 2006 ("*Alion II*").

On September 29, 2006, Alion commenced this action challenging DISA's decision to award a contract to ITT. Alion asked the Court to enjoin the agency from



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

following GAO's recommendations, but did not seek any other interim injunctive relief.[2] Now, nine days after the expiration of the statutory stay on September 26 and with less than 24 hours notice to the other parties, Alion has suddenly sought an emergency order that would ban DISA from lifting the stop work order and commencing the transition.

**ARGUMENT**

To obtain a TRO, the plaintiff must show: (1) a specific, irreparable injury if the court does not enjoin contract performance; (2) a substantial likelihood of success on the merits; (3) the harm to plaintiff outweighs the harm to the defendant; and (4) that granting preliminary relief is in the public interest. *Bannum, Inc.*, 56 Fed. Cl. at 456; *OAO Corp.*, 49 Fed. Cl. at 480. This Court recognizes that the grant of a TRO is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *OAO Corp.,* 49 Fed. Cl. at 480; *see also Cincom Sys., Inc. v. United States,* 37 Fed. Cl. 266, 268 (1997) ("clear and convincing evidence" burden). Moreover, the plaintiff bears a heavy burden to show a likelihood of success on the merits because the court cannot use "an exceptionally weighty showing on one of the other three factors to grant [relief] if a movant fails to demonstrate a likelihood of success on the merits." *Avtel Servs., Inc. v. United States*, 70 Fed. Cl. 173, 227 (2005) (quoting *Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004).

---

2 Because the latest Alion protest was denied, GAO granted no relief and made no "recommendations." It is not clear, therefore, exactly what it is that Alion is asking the

*(footnote continued on next page)*



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# I. ALION CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

On the merits, Alion's highly generalized claims ignore rather than challenge the findings in the agency's extraordinary administrative record that includes 500 pages of detailed analysis of ITT's potential conflicts of interest and of ITT's plan for avoiding or mitigating those conflicts through the assignment of work to other members of its team. In fact, Alion essentially asks the Court to remake the agency's decision rather than review it. But that is not the Court's role. This Court will not substitute its judgment for that of the agency; rather, this Court limits its review to "whether the agency considered the relevant factors and made a rational determination." *Rig Masters, Inc. v. United States*, 70 Fed. Cl. 413, 420 (2006).

As GAO recently found: (i) Alion "has not identified any material aspect of the agency's review and analysis that renders the agency's conclusions unreasonable;" (ii) the agency's identification of potential conflicts were "thorough and complete;" and (iii) the agency reasonably concluded that the impact on quality of performance by ITT's reliance on firewalled subcontractors would be "minimal." *Alion II*, slip op. at 8-10. There is no legal authority to support Alion's reckless claim — twice rejected by GAO — that ITT should have been "disqualified" from the procurement because it had an "unmitigatable conflict."

*(footnote continued from previous page)*

Court to enjoin on the preliminary injunction.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

It is well established that this Court gives due deference to bid protest decisions of the GAO in view of the expertise of the GAO in procurement matters. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989); *Chas. H. Tompkins Co. v. United States*, 43 Fed. Cl. 716, 719 (1999); *Cincom Sys., Inc.*, 37 Fed. Cl. at 268. That deference is especially appropriate here. Over the course of time, Alion filed seven protests or supplemental protests, the parties submitted hundreds of pages of briefs, and GAO conducted a three-day evidentiary hearing. After GAO sustained the first protest, principally on the grounds that the agency had failed to thoroughly analyze and identify the full extent of ITT's potential conflicts, the agency spent almost three months and 1400 estimated manhours implementing GAO's recommended corrections and producing an exhaustive report on the conflict issues and their contractual implications. GAO's final decision in the matter is itself thorough and well reasoned.[3] For purposes of this emergency motion and the extraordinary relief it seeks, therefore, this Court need go further than the GAO decision to conclude that Alion has failed to demonstrate a probability of success on the merits.

Finally, Alion argues that the agency should have reopened the technical evaluation based on the results of its new OCI analysis. But Alion ignores the undisputed facts. First, following the original technical evaluation, the offerors were not permitted to

---

3 Alion's attack on the GAO decision is essentially that the final GAO decision was inconsistent with the first one. *See* Alion Mem. in Supp. of TRO App. at 30-32. There is no such inconsistency. Alion simply fails to appreciate that the agency performed an entirely new analysis of the conflict issues in response to the guidance in the first GAO decision.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

revise their proposals in any area other than the OCI mitigation plans themselves, and no one did. Second, ITT's performance plan, from day one of this procurement, was to perform the work with a ***team*** of [redacted] highly qualified and experienced subcontractors who would provide expertise in various task areas and [redacted]. In fact, ITT projected, from the beginning, that the [redacted] subcontractors might perform as much as [redacted] the work, [redacted]. Third, ITT's proposal, as originally evaluated, had always proposed to address impaired objectivity conflicts through assignment of the conflicted work to a firewalled subcontractor. Finally, the agency concluded — and GAO agreed — that the use of firewalled subcontractors, even for almost one-third of the work, would have only a minimal impact on contract performance. Given these facts, there was no reason to reconsider the original technical evaluation findings.

In these circumstances, Alion has not and cannot show a likelihood of success on the merits.

## II. THE BALANCE OF HARMS FAVORS THE GOVENRMENT AND ITT

This contract was awarded over 14 months ago after a full and open competition. In that competition, ITT was judged to have submitted the superior technical proposal at a lower cost than Alion. The Government originally wanted to commence performance in the summer of 2005, prior to the start of the 2006 fiscal year. That fiscal year has come



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

and gone, and the current Alion contract, already extended several times, is slated to expire on December 31, 2006.

The Government will obtain great service improvements and cost benefits from the new competitive contract, which is replacing an outmoded sole source contract. Unless ITT is permitted to commence performance very soon, it will not be able to complete the transition by year end and its capability to conduct an effective transition of the work will be degraded. *See* Declaration of Michael R. Wilson (copy attached as Exhibit 2). Every day of additional delay jeopardizes the success and timeliness of the transition and denies the Government the benefit of the improvements in service and cost under the new contrast.

In contrast, the principal harm alleged by Alion — the loss of its workforce to ITT — can easily be avoided during the period preceding the Court's hearing on the preliminary injunction.[4] In response to the Court's suggestion that the parties attempt to resolve their dispute concerning performance pending a decision on the motion for a preliminary injunction, the Government and ITT have notified Alion that they will agree that ITT will not acquire any Alion employees during that period. Alion has not even responded to that offer.

Ironically, it is the continued delay in allowing ITT to commence performance that itself presents what may be the greatest risk to the Alion workforce. As in almost every

---

4 Most of the other harms alleged by Alion either flow from the alleged loss of its workforce or are purely monetary harms that do not constitute irreparable harm.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

government service contract, and consistent with government preferences and policy, ITT submitted a [redacted] Wilson Decl. ¶ 17. As ITT's Michael Wilson explains: [redacted] *See* Alion Mem. in Supp. of TRO App. at 9. If the Government is enjoined from proceeding with the ITT contract, the current Alion workforce may no longer be available to Alion, to ITT, or, most important, to JSC.

In sum, Alion will not suffer any substantial harm merely from allowing ITT to begin the transition over the next several weeks (pending a decision on the Alion motion for a preliminary injunction). In contrast, every day of continued delay places a successful transition at greater risk, threatening substantial and irreparable harm to the interests of JSC and ITT.



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## CONCLUSION

For these reasons, the application for a TRO should be denied.

Respectfully submitted,

Thomas C. Papson

MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7639
(202) 496-7756, facsimile

Attorney of Record for Plaintiff
Advanced Engineering & Sciences, a
division of ITT Corporation

Of Counsel:

Jason N. Workmaster
Kara M. Klaas
McKenna Long & Aldridge LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 496-7500

Dated: October 6, 2006



PROTECTED INFORMATION TO BE DISCLOSED ONLY IN
ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER