# In the United States Court of Federal Claims

No. 06-682C
Originally filed: October 11, 2006
Reissued: October 23, 2006[1]

* * * * * * * *

| | | |
|---|---|---|
| ALION SCIENCE AND TECHNOLOGY CORPORATION, Plaintiff, v. UNITED STATES OF AMERICA, Defendant, and ADVANCED ENGINEERING & SCIENCES, a division of ITT CORPORATION, Defendant-Intervenor. | * | Temporary Restraining Order; Post-Award Bid Protest; Preliminary Injunction; Substantial Likelihood of Success on the Merits. |

* * * * * * * *

J. Scott Hommer, III, Venable LLP, Vienna, VA, for plaintiff Alion Science and Technology Corporation. Peter A. Riesen, Kier X. Bancroft, of counsel. L. James D'Agostino, Richard L. Moorhouse, Andrew Belofsky, Greenberg Traurig, LLP, McLean, VA, of counsel.

Frank Jefferson Hughes, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. Flayo O. Kirk, Office of General Counsel, Defense Information Systems Agency, Falls Church, VA, of counsel.

---

[1] This Opinion was filed initially under seal on October 11, 2006, pursuant to the protective order filed in this case. We gave the parties an opportunity to advise the court of any "protected information" referred to in the Opinion. Defendant and defendant-intervenor jointly requested certain redactions, and we replaced that text with brackets ( [ ] ). Plaintiff made no such proposals. The Opinion also contains some minor changes for clarification.

Thomas C. Papson, McKenna Long & Aldridge LLP, Washington, D.C., for defendant-intervenor ITT Corporation. Jason N. Workmaster, Kara M. Klaas, of counsel.

## ORDER AND OPINION

**HODGES**, Judge.

We denied plaintiff's application for a restraining order during the October 6 hearing, primarily because we did not believe Alion has a substantial likelihood of succeeding on the merits. Plaintiff also did not show that it would suffer irreparable harm absent injunction, that the balance of hardships tilted in its favor, or that injunction would serve the public interest. The purpose of this Opinion is to memorialize that ruling, and expand upon the court's rationale for denying the petition.

## BACKGROUND

The following facts come from the Complaint, plaintiff's motions, and intervenor's opposition. The administrative record has not been filed. The Defense Information Systems Agency issued a request for proposals in February 2005 to provide the Agency's Joint Spectrum Center with electromagnetic engineering services. The services would "support the Warfighter, Federal and non-Federal agencies, allied Governments, NATO, and the private sector." DISA announced it would evaluate offerors' technical proposals, past performance, and cost. It would award the contract to the bidder offering the Government the best value. The technical category included four subfactors of evaluation. These were technical approach, management plan, transition plan, and organizational strategic quality assurance plan. Those subfactors included various elements, of which the management plan's "Organizational Conflict of Interest Plan" is important for our purposes. The RFP's requirement that offers include this Conflict of Interest Plan had the effect of announcing that the Agency recognized that problems regarding organizational conflicts could arise during contract performance. Potential conflicts of concern were those that would impair the contractor's objectivity in performing the contract requirements.[2]

DISA held discussions with two bidders, Alion and ITT, following initial offers. They submitted final proposals thereafter, and the Agency determined that ITT's offer presented the best overall value. Alion was the incumbent on the contract. DISA awarded a new contract to ITT on August 5, 2005.

Alion protested the award to the Government Accountability Office, particularly on

---

[2] FAR subpart 9.5 governs the conflicts at issue in this case, which are Organizational Conflicts of Interest, or OCIs.

the issue of ITT's plan for mitigating potential organizational conflicts of interest. GAO dismissed the protest after DISA agreed to take corrective action. Such action included the Agency's request that Alion and ITT submit revised conflict of interest plans. DISA evaluated those plans and concluded that ITT's offer had the potential for conflicts in fifteen percent of the work, but nevertheless was acceptable because ITT intended to rely upon a "firewall" to isolate it from subcontractors that would perform the conflicted work. DISA awarded the contract to ITT. This decision led to Alion's second GAO protest.

GAO sustained the protest in January 2006 on the basis that DISA did not identify the nature and extent of ITT's conflicts of interest. GAO recommended that DISA address the scope of ITT's involvement in spectrum-related services and reevaluate the potential for conflicts that ITT's proposal could create. GAO also expressed interest in the impact of ITT's proposed "firewalling" procedure as a tool to mitigate the conflicts.

The Agency again requested conflict plans from Alion and ITT. DISA conducted an in-depth analysis of ITT's potential conflicts and the likely impact that firewalling would have on ITT's quality of service. It determined that ITT's potential conflicts of interest were twenty-nine percent instead of fifteen percent but concluded that ITT's proposal remained the best value to the Government.

DISA notified Alion in June 2006 that it had selected ITT for contract award, and Alion again protested. GAO dismissed Alion's third protest in September, and plaintiff filed a Complaint here three days later. Alion moved first for a preliminary injunction then filed a TRO application when DISA announced its intent to have ITT begin performance on the contract before the court would hear Alion's request for the injunction. As the incumbent, Alion sought to keep DISA from lifting the stop work order for twenty days, or until such time as this court could decide the merits of Alion's protest.

## APPLICABLE LAW

The Tucker Act authorizes this court to "award any relief that the court considers proper, including . . . injunctive relief." 28 U.S.C. § 1491(b)(2). However, "[i]njunctive relief is an extraordinary remedy." Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 614, 616 (2001) (citing FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993)). Courts weigh the following when deciding whether to issue a TRO: (1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable injury without relief; (3) whether the balance of the harms tilts to plaintiff absent relief; and (4) whether granting injunctive relief is in the public interest. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983); Avtel Servs., Inc. v. United States, 70 Fed. Cl. 173, 226 (2006). "No one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp., 3 F.3d at 427. The decision to order an injunction is within the sound discretion of the trial court. Id.

**DISCUSSION**

Likelihood of Success on the Merits

Generally, a reviewing court does not disturb an agency award unless it is arbitrary, capricious, an abuse of discretion, or otherwise violates applicable procurement law. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706; Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Alion offers several reasons why DISA's award to ITT was arbitrary, capricious, and an abuse of discretion. The court was concerned primarily with two of these. First, we were uncertain whether DISA meaningfully considered the extent and impact of the OCIs in ITT's proposal. Alion maintains that DISA relied heavily on ITT's assurances that its firewalling of subcontractors would mitigate such conflicts without reaching an independent conclusion. Second, we were bothered by the source selection authority's use of term "stranglehold" to describe Alion's incumbent status. This statement could suggest that DISA awarded the contract upon consideration of factors other than those in the Solicitation.

We considered these issues fully. Alion is unlikely to succeed on the merits, especially considering the deferential standard of review to which this court is bound in analyzing "best value" procurements. See, e.g., Bean Stuyvesant, LLC v. United States, 48 Fed. Cl. 303, 320 (2000).

*Whether DISA reasonably addressed the scope of ITT's impaired objectivity OCIs*

Plaintiff argues that "ITT claims and DISA has accepted - unreasonably - that all OCIs will be mitigated by firewalling subcontractors[,] [h]owever . . . ., neither ITT nor DISA have an understanding as to the extent of the OCI-impacted work under the Contract." We disagree. Our review of DISA's actions after GAO sustained Alion's first protest reveals that DISA engaged in an exhaustive review during which it gained an understanding of the extent of the OCI-impacted work. Only then did the Agency decide to award the contract to ITT.

The GAO decision in favor of Alion stated that DISA "failed to reasonably identify and evaluate potential OCIs associated with ITT's performance of this contract and, accordingly, failed to reasonably evaluate the effect that such OCIs will have on ITT's contract performance." Alion Sci. & Tech. Corp., B-297022.3, 2006 CPD ¶ 2, 2006 WL 59564, at *8 (GAO Jan. 9, 2006). GAO advised that the Agency "reconsider the extent of ITT's impaired-objectivity OCIs, taking into consideration the spectrum-related interests of ITT, ITT's competitors, and ITT's customers, and document its conclusions in that regard." Id. It also asked DISA to "evaluate the reasonable impact on the quality of performance that will be caused by ITT's reliance on 'firewalled' subcontractors to perform conflicted contract requirements." Id. GAO then recommended that the Agency make a new source selection

decision after reevaluating the proposals. Id.

It seems DISA reasonably implemented GAO's recommendations. The Agency obtained revised conflict mitigation plans from both offerors and critically examined them over a period of several months. DISA accepted comments from ITT and Alion with respect to ITT's alleged conflicts. DISA issued a lengthy report about ITT on May 31, 2006. It concluded with the following: "OCI does not preclude ITT from successfully performing the contract." Among other findings, DISA stated that

> [t]here is no work identified involving potential [Impaired Objectivity] OCI that could not be adequately avoided, neutralized or mitigated by ITT's OCI Plan. . . . ITT's OCI Mitigation Plan proposes dividing work among a team of subcontractors with overlapping capabilities, with 49% of the work going to the subcontractor team; this proposed workshare is adequate to firewall and mitigate the 29% potentially conflicted work.

DISA conducted its assessment in response to GAO's legitimate concerns. We cannot conclude on the limited record before us that DISA abdicated its responsibilities. Rather, the Agency arrived at its conclusions following a thorough analysis according to GAO's instructions. The evidence reveals that agency officials carried out their duties according to established standards.

*Whether consideration of impermissible factors led to award to ITT*

According to plaintiff, DISA's bases for awarding the contract to ITT "are not rooted in the Solicitation's evaluation criteria;" rather, the reason is breaking the forty-five year "stranglehold" of Alion over this contract. Plaintiff cites an e-mail from [ ], the Source Selection Authority, to another DISA official in support of this argument. [ ] wrote,

> when I visited [Joint Spectrum Center] a few weeks ago we went through their analysis in detail so I am comfortable that it was done well. The 29% [of ITT's potentially conflicted work] gives me pause, but given the firewalled subcontractors and the awareness we now have of the issue I believe we can move forward with confidence.
>
> The recent JSC assessment results cite the stranglehold that Alion has had on JSC for decades as a serious deficiency. Breaking this is a good thing.

Plaintiff correctly posits that in government procurements an award must be "based solely on the factors specified in the solicitation." 10 U.S.C. § 2305(b)(1). However, we do not read this communication as indicative of bias in favor of ITT. We understand this e-mail may be subject to different interpretations, but the court operates under the presumption that

government officials act in good faith. We cannot accept plaintiff's position on [ ]'s statements on speculation alone, and plaintiff has not offered further proof of any pretext. Read in context, [ ] comments appear to support DISA's overall conclusion that ITT's firewalling of certain subcontractors to mitigate potential conflicts is an adequate solution.

Irreparable Injury

Alion's alleged injuries fall into two categories: loss of its workforce and financial harm.[3] Specifically, Alion fears it will lose valuable employees with highly sought after knowledge and expertise in the industry. Its financial concern is the possible loss of award fees, valuable business opportunities, and the revenue and profits therefrom if the court does not enter an injunction. The awardee has promised not to "acquire any Alion employees" until this court has decided the merits of the protest. ITT's offer will ameliorate any injury with regard to plaintiff's current employees. This leaves only financial concerns. The law is clear that potential losses that are "primarily monetary . . . are not irreparable." OAO Corp. v. United States, 49 Fed. Cl. 478, 480 (2001).

Balance of Harms

Balancing the hardships requires consideration of the harms that injunctive relief would impose on the Government. See Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 744 (2000). "Generally, if the balance tips in favor of defendant, a TRO or preliminary injunction is not appropriate." OAO Corp., 49 Fed. Cl. at 484 (citing 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane §§ 2948.2, 2951).

Plaintiff argues that it "stands to suffer the immediate and irreparable loss of key personnel, substantial revenue, and significant degradation in the quality of work that it remains tasked to perform through the end of the year." Alion claims that the Government and ITT by comparison will not suffer any degree of loss because the contract "is a direct follow-on to Alion's current contract" and "performance has been extended [four times] before."[4] Plaintiff also asserts that ITT's takeover does not have to be completed before the end of the year, and the parties reasonably could transition in six weeks.

Plaintiff seems to discount that the Government wanted to commence performance

---

[3] Plaintiff's other arguments, such as Alion's loss of a competitive advantage, or corporate disruption, are a subset or otherwise related to its principal claims.

[4] Alion's contract was to expire in August 2005, but the Government extended it "first to October 31, 2005, then to February 23, 2006, then to August 23, 2006, and finally to December 31, 2006."

under a new contract in 2005 when it issued the RFP. The Agency concluded last year that ITT offers the best value, and DISA suffers harm each day that it is prohibited from moving forward on the new contract. DISA does not consider the terms of the prior contract favorable. As noted, we have no reason to conclude that Alion would be awarded the contract upon resolution of this protest. An incumbent contractor's desire to continue performance during the pendency of the protest litigation does not justify granting a temporary restraining order. See PGBA, LLC v. United States, 60 Fed. Cl. 196, 221, aff'd, 389 F.3d 1219 (Fed. Cir. 2004). ITT is contractually entitled to a ninety day transition period, which is compressed already due to the GAO protests. ITT may begin the process, despite plaintiff's beliefs that it would take less than three months to finish. The balance tips in the Government's favor.

Public Interest

Plaintiff offers two reasons why granting the injunction is in the public interest: protecting the integrity of the procurement process and safeguarding the national interests of this country by limiting disruption to the Warfighter. "It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 576 (2004). Alion has not demonstrated clearly that the procurement process has been compromised. The public's interest in open, honest, and fair procurements is not "insignificant," but in this circumstance the Agency's interest in proceeding without unnecessary judicial involvement is overriding. See OAO Corp., 58 Fed. Cl. at 484.

This court must give "due regard to the interest of national defense and national security" when entertaining requests for injunction in the procurement context. 28 U.S.C. § 1491(b)(3); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 376 (2002). The Government lifted the stop work order for eleven days last June. Alion did not identify any threats as a result that caused the court concern. Given the aggressive schedule for resolution of this matter, declining injunctive relief now will not place our nation's security at risk.

## CONCLUSION

For the reasons herein and those stated on the record at the October 6 hearing, injunctive relief is not warranted at this time. Plaintiff's application for a temporary restraining order and/or a preliminary injunction is DENIED.

s/ Robert H. Hodges, Jr.
Robert H. Hodges, Jr.
Judge